[Cite as *Wallace v. Golden Comb, Inc.*, 2013-Ohio-5320.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

## JOURNAL ENTRY AND OPINION
### No. 99910

## SCOTT J. WALLACE

PLAINTIFF-APPELLANT

vs.

## GOLDEN COMB, INC., ET AL.

DEFENDANTS-APPELLEES

### JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-780023

**BEFORE:** McCormack, J., Stewart, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** December 5, 2013

**ATTORNEYS FOR APPELLANT**

Richard C. Alkire
Dean C. Nieding
Richard C. Alkire Co., L.P.A.
250 Spectrum Building
6060 Rockside Woods Blvd.
Independence, OH 44131


**ATTORNEYS FOR APPELLEES**

**For Golden Comb, Inc., et al.**

Robert J. Koeth
Ann E. Leo
Koeth, Rice & Leo Co., L.P.A.
1280 West 3rd Street
Third Floor
Cleveland, OH 44113

**For Medical Mutual of Ohio, Etc., et al.**

Lisa A. Pavlik
ACS Recovery Services, Inc.
1301 Basswood Road
Schaumburg, IL 60173

TIM McCORMACK, J.:

{¶1} Plaintiff-appellant, Scott J. Wallace, appeals from a judgment of the Cuyahoga County Court of Common Pleas that granted summary judgment in favor of his landlord Grace Apicella and her company, Golden Comb, Inc. Wallace was injured by an improperly constructed staircase, where a handrail was not attached to a stud, in violation of the building code. After a careful review of the case law regarding landlord liability, we reverse the judgment of the trial court and remand the matter for further proceedings consistent with this opinion.

## Substantive Facts and Procedural History

{¶2} The facts in this case are undisputed. Apicella is the owner of Golden Comb, Inc., which operates a hair salon on the first floor of a property located at 7579 Broadview Road in Seven Hills. She bought the property in 1995, with the intent of renovating it into a hair salon and two apartments, one in the basement and one on the second floor of the building.

{¶3} For the renovation project, Apicella hired an architect to prepare the drawings and specifications and J&M Design Build to act as the contractor for the project. She also applied to the city of Seven Hills for the alteration to the property, and the city approved of it. The city, however, advised Apicella and Golden Comb, Inc. that it would be the property owner's responsibility to comply with the Ohio Basic Building Code ("OBBC"). The city inspected the construction at various stages and issued an occupancy permit when the renovation was completed in 1998. The apartments were

rented since then without incidents until an incident occurred in the stairway twelve years later.

{¶4} On March 19, 2011, Wallace, a tenant,[1] came home to the apartment in the evening, with three bags of groceries on his right arm. As he climbed up the staircase to his second-floor apartment, he held onto the handrail with his left hand. As he reached the top of the stairway at the second floor landing, he put his left hand at the end of the handrail. He placed his right foot on the landing, and as he lifted his left foot to the landing, the handrail pulled out of the wall. He lost his balance and fell to the bottom of the steps.

{¶5} Wallace suffered fractures in his rib, cervical spine, pelvis, and tail bone. He spent nine days in the hospital and required physical and occupational therapy, incurring $93,000 in medical bills.

{¶6} It turns out the handrail was attached to the wall by a single screw placed into the drywall, and the attachment was not backed up by a stud or any blocking material, in violation of the building code.

{¶7} Wallace filed a lawsuit against Apicella and Golden Comb, Inc. (collectively hereafter as "appellee landlord"). Depositions were taken of Wallace, Apicella, a city building official, and other tenants of the building.

---

[1] Wallace's friend, Norm Reid, was the tenant in the second-floor apartment. In 2009, Wallace moved into Reid's apartment, with Apicella's approval. Wallace paid Reid an amount per month toward the rent.

**{¶8}** Appellee landlord moved for summary judgment, which the trial court granted. Wallace now appeals from that judgment. His single assignment of error states: "The trial court committed reversible error when it granted defendants-appellees Golden Comb Inc. and Grace Apicella's motion for summary judgment."

**{¶9}** Summary judgment is appropriate when: (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for the party against whom the motion is made, reasonable minds can reach only a conclusion that is adverse to the nonmoving party. Civ.R. 56(C). We review the trial court's judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241.

## Landlord's Duty and Liability

**{¶10}** "At common law, a landlord was charged with a general duty to exercise reasonable care to keep the premises retained in his control for the common use of his tenants in a reasonably safe condition." *Brady v. Koehnke*, 1st Dist. Hamilton No. C-930240, 1994 Ohio App. LEXIS 3939, *5 (Sept. 7, 1994). In 1974, Ohio's legislature enacted R.C. Chapter 5321 (the Landlords and Tenants Act), "in an attempt to clarify and broaden tenants' rights as derived from common law." *Id.*, citing *Shroades v. Rental Homes, Inc.*, 68 Ohio St.2d 20, 427 N.E.2d 774 (1981).

**{¶11}** Specifically, R.C. 5321.04(A)(4) sets forth a landlord's duty as follows:

(A) A landlord who is a party to a rental agreement shall do all of the following:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition.

**{¶12}** R.C. 5321.04(A) "requires landlords to conform to a particular standard of care, the violation of which constitutes negligence per se." *Walker v. RLI Ents.*, 8th Dist. Cuyahoga No. 89325, 2007-Ohio-6819, ¶ 8, citing *Sikora v. Wenzel*, 88 Ohio St.3d 493, 496, 2000-Ohio-406, 727 N.E.2d 1277.

**{¶13}** Here, it is undisputed Wallace was injured by a handrail improperly attached to the drywall without a stud, in violation of the building code. It is also undisputed that the handrail was constructed by a contractor hired by appellee landlord and, furthermore, there was never any problems with the faultily attached handrail until the incident in 2011.

**{¶14}** Appellee landlord argues that a landlord is excused from liability if he or she has no notice of the defective condition. The issue presented in this appeal is, therefore, whether a landlord can be liable for a tenant injured by a defective condition of the premises, which had been negligently constructed by an independent contractor hired by the landlord, when the landlord — *or the tenant* — did not know of the defective condition. To resolve this issue, a careful review of the case law on landlord liability is in order.

### *Strayer*

**{¶15}** The first question is whether an independent contractor's negligence can be imputed to the landlord. The law on this issue has long been settled in Ohio. *Hughes v. Ry. Co.*, 39 Ohio St. 461, 475, 1883 Ohio LEXIS 397 (1883) (owner of real estate cannot "relieve himself from liability by contracting with others for the performance of work, where the necessary or probable effect of the performance of the work would injure third persons"). This legal principle is again clearly set forth by the Supreme Court of Ohio, almost 100 years later, in *Strayer v. Lindeman*, 68 Ohio St.2d 32, 36, 42 N.E.2d 781 (1981).

**{¶16}** In *Strayer*, an independent contractor negligently caused a fire in the premises while undertaking a plumbing repair. The court stated:

> "A landlord who employs an independent contractor to perform a duty which the landlord owes to his tenant to maintain the leased property in reasonably safe condition is subject to liability to the tenant, and to third persons upon the leased property with the consent of the tenant, for physical harm caused by the contractor's failure to exercise reasonable care to make the leased property reasonably safe."

*Id*. at 34, quoting Restatement of the Law 2d, Property, Section 19.1, at 270 (1977).

**{¶17}** The court in *Strayer* stressed that the duties imposed by R.C. 5321.04 are non-delegable, and held the following:

> [W]hen a landlord employs an independent contractor to make repairs in compliance with the statutory duties imposed by R.C. Chapter 5321, the landlord cannot thereby insulate himself from liability arising out of the negligent performance of those repairs. Rather, the negligence of such independent contractor, if any, is imputable to the landlord. In such a situation, the general rule that the negligence of an independent contractor is not imputable to his employer does not apply.

*Id*. at 36.[2]

{¶18} *Strayer*, 68 Ohio St.2d 32, 42 N.E.2d 781, has never been overruled. Pursuant to the principle set forth in *Strayer*, therefore, appellee landlord in this case can be subject to liability for the tenant's injury caused by the independent contractor's negligent installing of the handrail.

### *Shroades*

{¶19} Interestingly, on the same day *Strayer* was issued, the Supreme Court of Ohio issued another opinion on landlord liability. In *Shroades*, 68 Ohio St.2d 20, 427 N.E.2d 774, the court expounded on the notion of negligence per se regarding a landlord's violation of a statutory duty. In that case, a tenant was injured by two broken steps in a rarely used emergency – outside stairway, which the landlord had failed to repair, despite having received a notice of the broken steps from the tenant.

{¶20} The question in *Shroades* was whether the tenant's intervening act of using the emergency stairs broke the causal connection between the landlord's negligent act and

---

[2]This court had explained the non-delegable duty doctrine as follows:

"Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants."

*Rodic v. Koba*, 8th Dist. Cuyahoga No. 77599, 2000 Ohio App. LEXIS 5715 (Dec. 7, 2000), quoting *Richman Bros. v. Miller*, 131 Ohio St. 424, 3 N.E.2d 360 (1936), paragraph one of the syllabus.

the tenant's injury. In that case, the jury answered the question in the affirmative and the Supreme Court of Ohio affirmed the jury's verdict. The court stated the following:

> R.C. 5321.04 imposes duties on the landlord to make repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition. Furthermore, the purpose of the statute is to protect persons using rented residential premises from injuries. A violation of a statute which sets forth specific duties constitutes negligence per se. However, in addition to negligence per se, proximate cause for the injuries sustained must be established. Also it must be shown that the landlord received notice of the defective condition of the rental premises, that the landlord knew of the defect, or that the tenant had made reasonable, but unsuccessful, attempts to notify the landlord.

(Citations omitted.) *Id*. at 25-26.

{¶21} In the instant appeal, appellee landlord concedes the negligence of the contractor is imputed to the landlord pursuant to *Strayer*, 68 Ohio St.2d 32, 42 N.E.2d 781, and that the failure of a landlord to comply with the duties imposed by R.C. 5321.04 is negligence per se. However, citing *Shroades*, defendant argues that in order for the liability to attach, the landlord must have received notice (actual or constructive) of the defect of the handrail.

{¶22} This case is not analogous to *Shroades*, 68 Ohio St.2d 20, 427 N.E.2d 774. First, the main issue in *Shroades* was proximate causation. The syllabus of the case stated: "A landlord is liable for injuries, sustained on the demised residential premises, which are proximately caused by the landlord's failure to fulfill the duties imposed by R.C. 5321.04."

{¶23} Second, *Shroades* involved a patent defect known to the tenant. The court concluded that the landlord's failure to make the necessary repairs, despite receiving the notice of the defective steps, violated the duty imposed by R.C. 5321.04(A)(2).

{¶24} In the present case, Wallace could not have given notice of the improper attachment of the handrail to his landlord, because the defective handrail never manifested itself before the incident. To interpret *Shroades* as requiring notice to the landlord where the defect was *not* observable or known to the tenant is simply unfair, and we do not believe *Shroades* should be interpreted to apply to such circumstances.

{¶25} Indeed, none of the cases cited by appellee landlord that held landlords will be excused from liability where they had no notice of a defective condition involved factual circumstances where the defect was unknowable to the tenant, such as the present case. Almost all the cases cited by appellee landlord where the court required notice to the landlord involve an observable or patent hazardous condition in the premises.

{¶26} For example, in *Blount-White v. Pund*, 8th Dist. Cuyahoga No. 86093, 2005-Ohio-6382, one of the cases relied on by the trial court here in granting summary judgment, a tenant's foot was or got caught in a gap in a riser on the stairs leading into the house. This court held the landlord must have knowledge of the defective condition, or the tenant must have informed the landlord of the defective condition. A gap in the riser on the stairs, unlike the defectively attached handrail in this case, was an observable condition. In *Holloway v. McDaniel*, 8th Dist. Cuyahoga No. 91599, 2009-Ohio-3733, a drain for the washing machine became clogged and water backed up onto the basement

floor on several prior occasions. The tenant slipped on the water and fell, but because the landlord had not been notified of the drain problem, we held that the landlord was not liable.

## *Sikora*

{¶27} Indeed, we are not aware of any case law authority that predicates landlord liability on a notice to the landlord where the defective condition in the premises is latent.

{¶28} *Sikora*, 88 Ohio St.3d 493, 496, 2000-Ohio-406, 727 N.E.2d 1277, another case from the Supreme Court of Ohio regarding landlord liability, appeared to be an exception, on first glance. *Sikora* involved a latent defect in a deck, yet the court required notice before the landlord could be found liable to a tenant injured by the defective deck. A close reading of the case, however, shows that case is readily distinguishable.

{¶29} In *Sikora*, a deck attached to a condominium collapsed during a party held by one of the tenants. The collapse was caused by an improperly constructed deck, in violation of the building code. The deck was built by a developer. The landlord in that case purchased the condominium from the developer, after the deck had been constructed.

{¶30} The *Sikora* court first clarified the difference between the notions of negligence per se and strict liability (i.e., liable per se). The court explained that, with negligence per se, proof of a landlord's violation of the statute dispenses with the

plaintiff's burden to establish the existence of a duty and the breach of that duty. However, negligence per se did not mean the defendant is *liable per se*, because a plaintiff still must prove the other elements of a negligence claim, i.e., proximate causation and damages. Furthermore, the court explained that negligence per se and strict liability differ in that a negligent per se statutory violation may be "excused." *Id*. at 497. Lack of notice is among the legal excuses recognized by the courts. *Id*.

{¶31} The *Sikora* court explained that R.C. 5321.04(A)(1), which required landlords to comply with applicable building and safety codes, rendered a landlord in violation of the statute negligent per se, but it did not create strict liability. A landlord may be entitled to certain excuses, such as the lack of notice.

{¶32} After setting forth the law, the court then turned to the question of whether the appellee landlord's lack of notice of the defect in the deck excused the landlord. The court emphasized that the appellee landlord *was not involved* during the construction. *Id*. at 498. "Thus, no factual circumstances existed that would have prompted or required [the appellee landlord] to investigate the process that occurred between the city and the previous owner prior to his involvement. Given that [the appellee landlord] neither knew nor should have known of the condition giving rise to the violation of R.C. 5321.04(A)(1), his violation is excused and he is not liable to [plaintiff] for failing to comply with the OBBC." *Id.* at 498.

{¶33} The court, therefore, held that "a landlord's violation of the duties imposed by R.C. 5321.04(A)(1) or 5321.04(A)(2) constitutes negligence per se, but a landlord will

be excused from liability under either section if he neither knew nor should have known of the factual circumstances that caused the violation." *Id.*

**{¶34}** *Sikora*, 88 Ohio St.3d 493, 496, 2000-Ohio-406, 727 N.E.2d 1277, was a rare case where the defect was latent, just as in this case, yet the court required that the landlord had notice before liability could attach. We recognize that in *Strayer*, 68 Ohio St.2d 32, 42 N.E.2d 781, the fire occurred during the contractor's performance of work, therefore notice of the defective repair work was not an issue there and *Strayer* did not speak to the notice requirement. (For that reason, the *Sikora* decision did not mention *Strayer*.) The question for us, therefore, is whether *Sikora* would require notice under the circumstances of this case.

**{¶35}** There is a crucial factual distinction between *Sikora* and this case. The *Sikora* holding turned on the fact that the landlord purchased the property after the premises had been constructed and the landlord had no involvement at all during the construction of the defective structure. The *Sikora* landlord could not have possibly done anything to ensure the deck was constructed in compliance with the building code. In contrast, here, appellee landlord selected the contractor and was involved throughout the construction project. To find the landlord not liable because of a lack of "notice" under the circumstances of this case contravenes the well-established legal principle set forth in *Strayer*.

**{¶36}** That legal principle was recently affirmed by this court in *Sivit v. Village Green of Beachwood*, 8th Dist. Cuyahoga No. 98401, 2013-Ohio-103, where we stated "a

landlord may not shift the responsibility to an independent contractor of complying with laws designed for the physical safety of others." *Id.* at ¶ 28, citing *Shump v. First Continental-Robinwood Assn.*, 71 Ohio St.3d 414, 1994-Ohio-427, 644 N.E.2d 291.

{¶37} In *Sivit*, a fire was caused by faulty electrical wiring contaminated by water leaks within the building. The landlord claimed that liability should not attach because it hired independent contractors for the construction of the property. This court rejected the claim, emphasizing the landlord's duties of complying with the laws to ensure the physical safety of others are not delegable. *Sivit* at ¶ 28. We noted that "the landlord was the developer of the property and maintained oversight on the project. We have previously held that a developer of a condominium project is liable for construction defects, notwithstanding the fact a general contractor was hired to perform the construction work," citing *Point E. Condominium Owners' Assn. v. Cedar House Assoc. Co.*, 104 Ohio App.3d 704, 663 N.E.2d 343 (8th Dist.1994).

{¶38} We went on to discuss whether the landlord could be excused by a lack of notice, and we determined that the record shows that the landlord was on notice of the conditions causing the fire, because the faulty electric wiring had manifested itself in electrical surges, such as lights flashing off and on, lights dimming, water running between the walls, mildew, light bulbs flashing on and off, and numerous false fire alarms. *Sivit*, like most landlord liability cases, involved a defect that was patent and, therefore, is distinguishable from the present case in that regard.

{¶39} In conclusion, to predicate liability on a notice to the landlord when the tenant had no way of knowing a latent defect that had been created by an independent contractor employed by the landlord contradicts the long-established principle of landlord liability. The trial court improperly granted summary judgment in favor of appellee landlord in this case. Appellant's assignment of error is sustained.

{¶40} The trial court's judgment granting summary judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellees costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

MELODY J. STEWART, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR